223301223697 United States of America v. Tandre Buchanan Jr. Arguments not to exceed 15 minutes per side. Mr. Oleski for appellant. Good morning, your honor. May I reserve four minutes for rebuttal? Yes, thank you. Good morning, your honors. My name is Nick Oleski and I represent the appellant Tandre Buchanan. The actions that give rise to this criminal case occurred in Cleveland, Ohio on May 30, 2020 during civil justice protests following the murder of George Floyd. In Cleveland, as in many other cities, those protests began peacefully. But soon those protests turned to a state of civil unrest. And Cleveland was no different. Tandre Buchanan participated in those peaceful protests. He began by protesting peacefully. And then he, along with hundreds and perhaps thousands of others, participated in acts of vandalism and property crime. Out of curiosity, how do we know that he ever participated peacefully? Is that in the record? I mean, we know he went up to a bank and he broke the window. He walks around with a head of a deer and he breaks into the bakery. So what does the record show about the peaceful aspect at some point? So I don't know whether there's specific evidence in the record about his activities before, say, 5 or 6 p.m. on May 30, 2020. And to some extent, I don't think that entirely matters what he did an hour before he allegedly committed this robbery at the Colossal Hotel. Fair enough, fair enough. And this case should just have never been indicted in federal court, is my point. Is it ultimately his acts amounted to state-level property crimes? He did not commit Hobbs Act robbery. He did not obstruct justice in violation of a federal statute. The convictions here should be vacated. The district court here committed three categories of error. The first was evidentiary, when it admitted impermissible other acts evidence. The second was when it evaluated the sufficiency of the government's evidence. And the third was when it sentenced Mr. Buchanan. The district court erred when it calculated the restitution due to the victim of this alleged offense. Given the limited time that we have here today, I'm going focus on those last two categories. And if we have time, I'll return to the evidentiary error. It's a two-count indictment, starting with Hobbs Act robbery. The government on appeal essentially defends the judgment on two different grounds. The first is that Mr. Buchanan committed the offense as a principal when he took a chair from the business and used it to smash a window. And Mr. Buchanan himself never took anything from the Colossal Cupcakes. Well, he did. He took the chair. He breaks through the window, goes in the bakery, picks up a chair, takes it outside, smashes the window, and walks away. And then leaves the chair at the premises. He took the chair outside into a mob. But you never address in your briefing the fact that chair alone, taking the chair in the presence of the occupants of the building, seems to be enough at least for the first element of the crime. Two responses. The first is that I don't think that the government proved at trial that Mr. Buchanan took the chair, took any property or the chair, through violence or a threat of violence. To be sure, there's testimony that the victim felt that she was afraid. But I don't think that's enough. Wait a minute. Smashing the window, going in, taking a chair, taking it back out and smashing another chair is not a threat of violence? It's actual violence? To the property, not to an individual. And that's what the Hobbs Act prescribes, ultimately. Is taking property from somebody else through violence or the threat of violence. And I don't think that the evidence at trial showed that. Or putting someone in fear? If you were the woman standing behind the cupcakes in the display case and somebody breaks a window and comes in and picks up a chair and takes it outside and breaks another window, you don't think that's adequate to put someone in fear? Well, I think that is adequate to put somebody in fear. But I don't think that that's enough under the Hobbs Act to win a conviction. I think what the Hobbs Act requires is that the defendant take the property from somebody else through violence or the threat of violence. The fact that the victim of the offense was afraid, and I certainly would have been afraid too if I were in that store. So you're saying you have to take the property off the physical being of the person? No. But the property has to be taken through violence or a threat of violence. And I think what the evidence here showed is that Mr. Buchanan, he wasn't the first one who threw something through the window, but he certainly completed the act of breaking out one window. He was the second person who entered the store. And he took, he was in the store for about 15, 20 seconds. Do you have any Hobbs Act cases that even come close to helping you on that particular argument? Well, I cited the Gooch case from this court in my brief, which defines the Hobbs Act as a crime of violence, meaning that it's not enough just to show that the victim... Let me ask the question another way. Yes, you cited a case that says Hobbs Act. I got that. Is there any case you cited that has facts even remotely similar to this one that would suggest this is not a Hobbs Act crime of violence? Well, I don't have a case on all fours with this one, and I don't think the government has a case on all fours either. I would ask you, do you have one that's even close? Again, I would rely on the Gooch case for the principle of what is ultimately required to win a Hobbs Act conviction. And that comes straight from the language of the statute. That's to take the property through violence or the threat of violence. And what the evidence of trial showed, and this is government exhibit 52, is that Mr. Buchanan, after he breaks through the window, enters the store for about 15 to 20 seconds, comes back out with a chair, uses that chair from the outside to start smashing another window. After he breaks through the window, he slams the chair down and leaves. Reading your brief, it seems to me that you weren't even contesting in your brief that breaking out the window satisfies the Act requirement of Hobbs. What you seem to be arguing... The only thing you seem to be contesting was that he didn't intend to facilitate the crime. Am I right about that? Yes. But I think that goes to the government's second theory, which is that he's liable as an aider and abetter. Because I think the government has two different arguments. The first is that there was sufficient evidence that he's liable purely as a principal because he committed the substantive act by taking the chair from the property. And then the second is, well, if that's not enough, then he's liable as an aider and abetter because his acts assisted others in entering the store and taking property from the store. Doesn't that bleed over into the second issue about other Act evidence? And to tie those two together, doesn't our Dobbish case have a specific holding that Hobbs Act robbery is a specific intent crime? The government did cite that case. And I cited the Carmichael case from 2000, which admittedly is a Hobbs Act extortion case, where this court said that Hobbs Act extortion is not a specific intent crime. And it seemed to me that either Hobbs Act... Wasn't that an ignorance of the law analysis? It was. An intention to violate it, which is distinct, I think, from the Dobbish ruling that Hobbs Act robbery is a specific intent crime that would authorize other Act evidence. Ultimately, if Hobbs Act robbery is a specific intent crime, then I would acknowledge that under this court's case law, that at least some of the other Acts evidence would be admissible. Provided, I still think you need to do a Rule 403 balancing, but yes. And I think I also cited an 11th Circuit case in my brief that also indicated that Hobbs Act robbery was a specific intent crime. But I would point this court to the Carmichael case. And it seems to me that I understand the point, Your Honor. If I could turn to the sentencing issue. Yes, and I would ask you at some point before your time's up to please address restitution.  The sentencing issue that I raised in my brief is purely the restitution issue. The trial judge awarded approximately $230,000 of restitution. About $200,000 of that contemplated lost profits allegedly due to the victim. We take the position that lost profits can never be awarded in a property offense case. And that's so for a couple different reasons. First, the language of the Mandatory Victim Restitution Act, where the statute requires that the restitution be based on the value of the property taken either at the time it was taken or at the time of sentencing. The statute doesn't contemplate a forward-looking analysis to address lost profits. And for the reasons I cited in my brief, I think this court's decision in Lively is distinguishable. Number one, Lively was decided under the VPWA, I think is the predecessor statute. And secondly, it's a fraud case. It's not a property destruction case like this one. And I think it's inappropriate for the trial court to award lost profit damages as restitution. Lively also talks about the only way to assure the restoration of those victims to their prior state of well-being. Can you put these women that own the bakery back into their prior state of well-being prior to their store being destroyed without awarding lost profits, if you just look at that part of Lively? Well, I have two responses. The first is, I think the answer is yes. Ultimately, the damage... Their store is closed for four months. They can't use the property. They're just out of luck for $180,000. And that's why I would point to the Fifth Circuit's decision, and I think it's Mitchell, which involved the theft of some trucks where the district court awarded lost profits and the Fifth Circuit on appeal said that that was inappropriate. The restitution that should have been awarded was the value of the trucks, not the income that the trucks would have generated had they not been stolen. So that's my first response. My second response, Judge, is that Lively relies on that. The language in Lively, restore the victim to her prior status, that comes from the legislative history of the victim, the VPWA, not from the language of the statute. Well, I understand you may think Lively is wrong, but it's a circuit case. We're bound by it, unless you can distinguish it. All you've said is that, well, that was a fraud case. That wasn't a property damage case. Why would it be different for fraud than property damage or vice versa? So I see my time is up. If I can respond to your question, Judge. Sure, go ahead. So Lively is a mail fraud case where the defendant fraudulently obtained merchandise from the victim for nothing. And then the defendant sold the product on the market and generated income. And what this court held in Lively is that when determining the restitution due the victim for the property that he had lost, for the property that he was defrauded out of, this merchandise, the court was distinguishing between, do we award the wholesale price or retail price? And the court said retail price because the victim didn't have the property that he was defrauded out of. The difference between wholesale and retail is profit. That's right, exactly. So what we would say here, or what I would say here, is that in this case, is that Mr. Buchanan, number one, didn't take anything from the victim. It's a property offense case involving property damage. The proper measure of restitution is the damage to the property that Mr. Buchanan caused, not the future-looking damages. Well, and that's the other distinguishing point about Lively, is that Lively focused on the property that was taken, not the future hypothetical profits that the victim might have generated had he had that property. And that's what the district court did here. It awarded hypothetical future damages based on a lost profit analysis. Is the retail value what, hypothetically, it would have sold for in the future? No, it was the value that it actually sold for. At the time? Yes. It couldn't be sold. It was stolen. But I think at Lively, the defendant did sell the property. And that's why, because I think, so in a Lively... I'll look that up. Thank you. I apologize. Thank you, Judge. Thank you. Good morning, Your Honor, and may it please the court. I'm Bill Powell here on behalf of the United States. Morning. I would like to start where my colleague did with the sufficiency of the evidence on the Hobbs Act robbery charge and why this is a federal case. There's a big difference between what Mr. Buchanan did at Colossal Cupcakes and what other participants in this riot did other places, and including what Mr. Buchanan did at the Huntington Bank. And that big difference is the presence of human victims. This was not just violence directed at property, but violence directed at people. And the Hobbs Act, the text is very clear that it applies to violence against both people and property. I thought he was suggesting maybe that it was only violence against people. But the statute says, and this is in 18 U.S.C. 1951, threatened force or violence or fear of injury, immediate or future, to his person or property. So the smashing of the window, that's sufficient to be violence toward property, certainly. But also the testimony of Ms. Candice suggests that she was standing right on the other side of that window, that after the first brick came through, she called out and said, don't come through, we're in here. And at that point, Mr. Buchanan had a choice. He could have moved down the street, realized, no, we shouldn't hit this door because there are people in there. But instead, he picks up something from the street. You can see this clearly in Exhibit 52, the security camera footage from across the street. He takes that thing he picked up, maybe it was a paint can or something, uses it to smash out that whole first window, and then he chucks it into the store, kind of indiscriminately in the direction of where the people are. And that is certainly violence, again, directed at property, also at people. Now, he also argued about whether the chair was taken. There isn't precedent in this circuit interpreting the language of the statute in this regard, but it says taking or obtaining. When he smashed out the first window, he then went into the store. He picked up that stool. He took possession over it. He took it outside the store. He then used it to smash the second window, and he discarded it in the street outside the store. Now, I think that he took dominion over the stool. He used it for its own purposes. And at that point, he had taken or obtained it. That matches sort of any dictionary definition of what it means to take or obtain, to take possession of something. And I think there's a useful analogy there to the bank robbery statute, which has different language. It says take or carry away. And that carry away language might suggest that you need to transport it somewhere else. But that kind of language is not present here in the Hobbs Act. So I think the Hobbs Act text is best read to mean that as long as you've taken possession of it, there's no duration that you have to possess it for, that that is a taking. Now, we didn't yet address today the sufficiency of the evidence for the tampering with evidence charge. But here there's evidence that the very next day after the crime, he started getting text messages that the videos of what had happened were all over the news, everyone was seeing them, and that his orange shirt was really standing out. And someone said in a text message to him, they're going to hang you for this. And why did you wear that orange shirt? And that made it reasonably foreseeable to the defendant that a official proceeding might result from what he had done from the crime he had committed. And he then disposed of all that orange clothing to prevent its use in an official proceeding. So the evidence is sufficient there as well. Turning then to the evidentiary issues under Rule 404B, this evidence could come in either for purposes of identity or for purposes of intent. There was only one witness at trial who was able to identify the defendant. That was Agent Hastie. And everyone else just said he was the orange shirt guy. But Agent Hastie was able to identify him in part based on this other bad act evidence. He had a photo of him holding the deer head in the orange shirt. Because of that, witnesses came forward and identified him as the person who was in that photo and in the photo at the cupcake shop. I understood his argument, right? I think Mr. Oleski conceded that during his oral argument. He said, well, yeah, it is an intent crime. And so, yes, that applies to this other evidence. But you still have to apply 403B. So that seems, unless I misunderstood him, to be his argument as of today. That's good by us. And, of course, the 403 balancing here, I think, certainly comes out in our favor. Because that other act evidence is probative of his intent. He was taking things at CityTap, for instance. And that shows his intent to take things, helps show his intent to take things. And also for the aiding and abetting claim, especially, shows his intent to facilitate robbery at the Colossal Cupcakes. And then in terms of the prejudice, we have four different angles of video of what happened at Colossal Cupcakes. So that's how we know what happened here. There's no real risk that he would be convicted based on propensity from the other act evidence. So I think the risk of unfair prejudice is quite low. Then turning finally to the restitution issue, Lively is binding precedent. And the passage you quoted, Judge McKeague, is the key one. It says that to make the victim whole, that lost profits must be available in restitution. Is there any reason to believe that Congress intended to narrow what was available for restitution in passing the new act to replace the act that was in consideration in Lively? No, two points about that. First, the relevant portions of the new statute, the MVRA, are exactly the same as the old statute. And so this court has said that they should be interpreted in peri materia because all of these provisions use the exact same language. So you're interpreting the exact same text in Lively. But also, in terms of Congress's intent, the MVRA was intended to be more protective of the rights of victims than the prior statute had been. So there's no reason at all to think that Congress would have been intending to cut back. Wasn't Lively an issue of whether you get retail or wholesale value? That's right, Your Honor, that Lively did involve them between wholesale and retail value. But that difference just is lost profits. It's the markup that you would have had on that property. The way Lively explained it, it would be applied to this case, the difference between the retail price of what was stolen and the price to manufacture it. So here, what was stolen were all the cupcakes. So rather than saying, okay, you have to prove how much it cost you to make those, Lively clearly says, no, you get the retail value. But I don't see where it says anything about your claim that that means that you can get future hypothetical lost profits. Isn't there, in general, almost a circuit split or disagreement among the circuit cases? There is a disagreement among the circuit cases, that's true, but I think Lively and the Second Circuit are right. This is not the Fifth Circuit Mitchell case. The issue there was whether you had to pay for the trucks themselves, the value of those trucks, or whether you got the lost income from the trucks that had been stolen. And based on the plain language of the MVRA, the Fifth Circuit vacated that restitution. They said, no, that's not appropriate restitution because Congress knows how to say if it's going to give you that kind of remedy, and it didn't say so here. What is your response to both Mitchell and Sharp, Fourth Circuit case? Right. So respectfully, I think the Fifth Circuit and the Fourth Circuit have both gotten this wrong. And I think Judge Rakoff was right about this in the Second Circuit's opinion in Milstein, when he said that those cases are based on a misapprehension of the very different notions of income suffered by a victim of personal injury versus lost profit as a measure of loss suffered by a victim of misappropriation of property. And that matters because in the statute, the next line down says that for people who suffer personal injury, that they can get lost income or medical bills and that kind of thing. And so the Fifth and Fourth Circuit said that means that if you get lost income for personal property, but as the Second Circuit said, I think that's misunderstanding how the parts of the statute work together because the value of property includes when it's operating capital, like what was smashed at the store here. I would agree with you for the cupcakes. You mentioned the cupcakes. I agree there, the retail price of the cupcakes would be adequate. But here we're talking about the other property that was destroyed. We would not disagree. I assume that there's a right to replacement, repair, and construction costs. Everything he tore up, replacement, repair, and construction costs, right? Right. That should certainly be covered. I think that is common ground as well. But the stuff that he tore up, the stuff in the kitchen that they used to bake cupcakes or the display cases that they used to sell cupcakes, that is operating capital for the business. And so the value of that display case to Miss Kanda isn't just the price that's required to put new glass in it, but rather the value of how many cupcakes she could have sold out of that display case over those months. And so I think that is based right in the text of the value of the property. And the text differentiates between the date of damage, loss, or destruction or the date of sentencing. And so here on the date that it was destroyed, the value included what profits that property would generate over time for her until it could reasonably be repaired. And so here the government determined that it would have taken about four months to repair. I'm struggling with the language of the statute. Beginning with the actual language in the statute itself, which says value of property. And that seems to me to fit very well with anything this guy tore up, he's going to have to pay for. Although I would imagine that that's unlikely to happen here. So the question is, why when Congress knows how to say you can have lost profits, as it would to someone who can no longer work. That's a different conceptual matter. You've harmed me. I cannot go to work and earn my living. And so the statute says you can have your wages because you can't do it. But as for property damage, it talks in terms of the value of the property itself. I'm not quite seeing how you make the leap to saying, oh, it is the value of the property, but we also get to talk about the value that in the future, that property would render the profits. That seems to me a different conceptual matter. I think any appraisal of a business, when you're looking at the value of a business, you look at the book and what the profits that would be generated by that business. And here I think it's the same for the business operating capital, that that property is used by the business to generate income. And so the value of the property includes that income that that property generates for the business. In the question that you were just asked, Judge Stranch added the word itself to the language of the text. Does itself appear in the text? It does not. So if it said itself, you could make a better argument that you get the property, but not what you're going to use the property for. But it doesn't say that. And that's what Milstein is saying, basically. So our choice here is, do we like the Fifth Circuit approach or do we like the Second Circuit approach? I think that's right. But I think Lively puts a strong thumb on the scale toward the Second Circuit because Lively has incorporated retail price and just specifically says the language of Lively in order to restore the victims to their prior state of well-being, the order of restitution had to include their lost profits. And so I think that's something you could reconsider en banc, maybe. But I take that to be, not that I think you should, but I take that to be binding precedent on this court. If there are no other questions, then we would ask you to affirm. Thank you. Thank you. Thank you. I'll start with the restitution issue. I do think, for the reasons that I identified in my brief, that Lively is distinguishable. I don't think, although certainly the court can go en banc to reconsider Lively, I don't think the court needs to go en banc to reconsider that this panel can come to a different conclusion. And so for this reason. You're saying we don't have to follow Lively? Well, I'm saying that Lively is distinguishable. I'm not suggesting that you find that Lively is binding precedent and then ignore a published case. No, but I think it's distinguishable. And I think the principal reason I can distinguish it is this, that ultimately in Lively, how the court calculated restitution was based on the property that was actually taken. Not future profits that the victim might have generated. Not future harms that the victim might have suffered. Instead, the restitution in Lively was based on the property that the defendant defrauded the victim out of. And ultimately the only question for the court as well is the value, the wholesale price, what the victim paid for to acquire that property, or the retail price, what the victim would have sold that property for had they not been defrauded. And I think the rule that this court can reach here would be consistent with that. And as Judge Stranch indicated, I don't think I'd be here fighting about this if the district court had said, well, there were 1,000 cupcakes taken and the business would have sold those for $4 a piece and the restitution should be $40,000 or $4,000, for example. But that's not what the district court did here. Basically, you don't think that we should be trying to restore the victim to her prior state of well-being? Well, yes and no. Yes, in the sense that certainly the physical damage to the property, the damage to the window, the other physical damage to the property and to the extent that there was inventory taken, although I don't think there's any evidence in the record about the value of the inventory taken. But certainly, I think that if the district court had used that as the measure for restitution, then that would be restoring the victim to her prior state. I don't think that it's appropriate for the restitution statutes to try to hypothecate or future damages, essentially. As well, the victim would have made, just making a hypothetical, the victim would have made $50,000 a month had she stayed in business. I don't think that that's an appropriate use of the restitution statutes and I think we can look straight to the language of the statute where the MVRA limits, as we all know, federal courts don't have the inherent power to award restitution. It has to come from Congress and what Congress said is that restitution for property crimes is limited to the value of the property at the time of the offense or the value of the property at the time of sentencing less the value if it's returned. And that's why I think the... So just looking at it logically, why would value of property not include the future use to which you would put that property? Why is it either texturally or purposes outside the context of value? Because I think what Congress was talking about in the restitution statutes, and I think that the Mitchell case I think is the clearest example of this, following this, is it's limiting to the actual property that was taken or damaged, as the case may be. Congress was not focused on trying to compensate a victim for the loss of the use of the property. Instead it was trying to compensate the victim for the value of the property at the time it was taken or at the time of sentencing if it's been returned. I see my time is up. Thank you very much for your arguments and the cases submitted.